UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS P. JUSTICE, JR., | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 1:17-cv-01912-JMS-MPB |
| WENDY KNIGHT, | ) ) ) |
| Respondent. | ) |

**Entry Updating Address, Denying Petition for Writ of Habeas Corpus,
and Directing Entry of Final Judgment**

The petition of Thomas Justice for a writ of habeas corpus challenges a prison disciplinary proceeding, CIC 17-02-0151, in which he was found guilty of unauthorized possession of property. For the reasons explained in this entry, Mr. Justice's habeas petition must be **denied.**

Mr. Justice's motion to update case, dkt. [15], is **granted to the extent** that he has reported a new address. 7914 Dunston Drive, Indianapolis, IN 46239. **The clerk** shall **update** the docket accordingly.

**I. Overview**

Prisoners in Indiana custody may not be deprived of credit time, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004), or of credit-earning class, *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt.

*Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Jones v. Cross,* 637 F.3d 841, 845 (7th Cir. 2011); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000).

## II. The Disciplinary Proceeding

On February 12, 2017, Mr. Justice was charged with offense B-215, unauthorized possession of property in case CIC 17-02-0151. The Report of Conduct states:

> On Sunday, February 12th, 2017 at 3:49pm I, Sgt. J. Kelley was in the control area of unit A when I noticed Offender Justice, Thomas #9A-2A walk out of the TV room of the 2/4 side of A-unit. While going back to check the video I found that Justice was going through the ARH and DRH offender property. He was also found on video taking items out of boxes and then going on the range passing items to other offenders.

Dkt. 9-1.

On February 16, 2017, Mr. Justice was notified of the charges and received the conduct report and the Notice of Disciplinary Hearing (Screening Report). At that time, Mr. Justice was notified of his rights and he pleaded not guilty. Dkt. 9-2. Mr. Justice requested a witness, camera review, and evidence of the alleged stolen property. Mr. Justice did not request a lay advocate, but one was later appointed for him. Dkt. 9-4. Additionally, Mr. Justice was provided a copy of the video review, which stated:

> I, Sgt. J. Reed, reviewed the video footage for case: CIC 17-02-0150. The camera was reviewed for the date of 2/12/17 and at approximately 3:49:02PM Offender Justice walks up to the 2/4 A TV room and open [sic] the door. At approximately 3:49:17PM Offender Justice can be seen looking through property on the shelf and then exits at 3:49:22PM but then returns at approximately 3:49:27PM and is looking through property on the floor and goes back over to the shelfs with property on them and is looking through them and at approximately 3:49:50PM Offender Justice is seen exiting the 2/4 A TV room with items tucked under his right arm.

Dkt. 9-3.

Mr. Justice's witness, Michael Anderson (IDOC #16183), stated that Mr. Justice did not give him anything, and that he gave Mr. Justice a state envelope. Dkt. 9-5.

On March 1, 2017, the disciplinary hearing officer (DHO), Sgt. J. Reed, held a hearing in case CIC 17-02-0151. Dkt. 9-6. Mr. Justice pleaded not guilty and issued the following statement: "I walked up to the door and it was unlocked. I went in there and looked around but I didn't steal anything. I got envelopes from Mike." *Id.* After considering Mr. Justice's statement, staff reports, and the video evidence, the DHO found Mr. Justice guilty of offense B-215, unauthorized possession of property. *Id.* Due to the seriousness of the offense and the likelihood of the sanction having a corrective effect on Mr. Justice's future behavior, the DHO imposed the following sanctions: a written reprimand to not violate code 215, 30 days loss of commissary and phone privileges, and demotion from credit class B to credit class C. *Id.*

Mr. Justice's appeals were denied. This habeas action followed.

### III. Analysis

Mr. Justice argues that his due process rights were violated during the disciplinary proceeding. His claims are that: 1) he was denied his right to have witnesses; 2) he was denied his right to present evidence; and 2) he was denied an impartial decisionmaker. Dkt. 1, pp. 3-4.

Mr. Justice's first claim is that he was denied the opportunity to call "Mike" as a witness. He argues that he was not given a reason why his witness was denied. "Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). However, "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002).

"Mike" did provide a statement and answered the questions posed to him in writing by Mr. Justice. To this extent, Mr. Justice was not denied his right to call "Mike" as a witness.

In his reply, Mr. Justice argues that his witness should have been allowed to provide live testimony. The Seventh Circuit has held that there is a presumption that live testimony should be permitted unless there a valid reason for not allowing it. *See Whitlock v. Johnson*, 153 F.3d 380, 388 (7th Cir. 1998) ("We are . . . unconvinced by the prison's assertion that its policy of interviewing requested witnesses and summarizing their testimony in an unsworn report is a legitimate means of 'calling a witness' even when live testimony would be feasible."); *see also Doan v. Buss*, 82 Fed. Appx. 168, 170-71 (7th Cir. 2003) (rejecting the contention that "under *Wolff* oral testimony is not required as long as written statements are obtained."); *Ashby v. Davis*, 82 Fed. Appx. 467, 471 (7th Cir. 2003) (holding that "[t]he submission of a written [witness] statement is not by itself a valid reason for not appearing," and explaining that "[l]ive testimony is the presumption absent a valid reason for proceeding differently."). In addition, however, if there is no prejudice, any due process claim results in harmless error. *See Jones v. Cross*, 637 F.3d 841, 846-47 (7th Cir.2011). Mr. Justice has not shown that any denial of live testimony resulted in prejudice. Mr. Justice alleges that if "Mike" had been there to answer additional questions from the DHO, the DHO would have known that "Mike" was telling the truth. But, nothing "Mike" could have said would have directly refuted the video evidence showing Mr. Justice walking out of the TV room with property under his right arm. As such, his denial of witness claim fails.

Mr. Justice's second claim is that he was denied the opportunity to present the property he was accused of stealing at the hearing. He argues that he could not be found guilty of unauthorized possession of property without having the property at the hearing.

Prison authorities may not deny a prisoner's evidentiary requests without explanation. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process is satisfied if the explanation is "logically related to preventing undue hazards to institutional safety or correctional goals." *Ponte v. Real*, 471 U.S. 491, 497 (1985), or if the request was denied because the evidence was irrelevant or redundant. *Scruggs v. Jordan*, 485 F.3d 934, 939–940 (7th Cir. 2007). Here, the actual property was denied as evidence because it was not available at the time of the hearing. It was never confiscated. There was evidence in the form of the video showing Mr. Justice walking out of the TV room with property tucked under his arm. Therefore, there was no due process violation in this regard.

Mr. Justice's final claim is that the DHO was not impartial. This claim, however, was not raised in his appeal so it has been procedurally defaulted. Procedural default caused by failure to exhaust administrative review can be overcome if the petitioner shows cause and prejudice or shows that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Moffat v. Broyles,* 288 F.3d 978, 982 (7th Cir. 2002). Mr. Justice did not respond to the issue of procedural default in his reply, so he has made no showing of cause and prejudice. *Barksdale v. Lane,* 957 F.2d 379, 385 (7th Cir. 1992) ("The Supreme Court has defined 'cause' as some external objective factor, such as interference by officials or unavailability of the factual or legal basis for a claim, which impeded compliance with the state's procedural rule."). Therefore, the claim of impartiality is procedurally defaulted.

Even if the claim had not been defaulted, Mr. Justice has not shown that the DHO was not impartial. He argues that the DHO already had his mind made up before the hearing. Due process forbids officials who are directly or substantially involved in the factual events underlying the disciplinary charges, or the investigation of those events, from serving on the board hearing the

charge. *Piggie v. Cotton*, 342 F .3d 660, 667 (7th Cir. 2003). Adjudicators are entitled to a presumption of honesty and integrity. *Id.* at 666. Mr. Justice's claim that the DHO was going to find him guilty regardless of the evidence is unsupported. The DHO considered the conduct report, Mr. Justice's statement, and the video evidence in determining that Mr. Justice was guilty of the charge. *See Shroyer v. Cotton*, 80 Fed. Appx. 481, 485 (7th Cir. 2003) ("[U]nsupported allegations of vindictiveness on the part of the CAB do not overcome the presumption of honesty and integrity that CAB members are entitled to.").

"[T]he constitutional standard for impermissible bias is high." *Piggie*, 342 F.3d at 666. This presumption can be overcome with "clear evidence to the contrary." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Mr. Justice has not met this burden. Rather, he has only offered speculation. In addition, he has not shown that the DHO was personally involved in the circumstances underlying the investigation. His claim of bias or partiality on the part of the DHO fails.

Mr. Justice was given proper notice and had an opportunity to defend the charge. The DHO provided a written statement of the reasons for the finding of guilt and described the evidence that was considered. There was sufficient evidence in the record to support the finding of guilt. Under these circumstances, there were no violations of Mr. Justice's due process rights.

### IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceedings. Accordingly, Mr. Justice's petition for a

writ of habeas corpus must be **denied** and the action dismissed. Judgment consistent with this Entry shall now issue.

    **IT IS SO ORDERED.**

Date: 11/30/2017

_[signature: Jane Magnus-Stinson]_

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Abigail Recker
INDIANA ATTORNEY GENERAL
abigail.recker@atg.in.gov

THOMAS P. JUSTICE, JR.
7914 Dunston Drive
Indianapolis, IN 46239

NOTE TO CLERK: PROCESSING THIS DOCUMENT REQUIRES ACTIONS IN ADDITION TO DOCKETING AND DISTRIBUTION.